IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GRAVITAS EQUITY PARTNERS, LLC | ) ) ) | |
| *Plaintiff,* | ) ) | |
| vs. | ) ) | Case No.: |
| THE ARMAND GROUP, D/B/A THE ARMAND GROUP, LLC, and AMWEST EQUITY INVESTORS, LLC. | ) ) ) ) ) | |
| *Defendants.* | ) ) | |

**COMPLAINT**

Plaintiff, Gravitas Equity Partners, LLC ("Gravitas"), by and through their undersigned counsel, for its Complaint against Defendants The Armand Group, d/b/a The Armand Group, LLC, and Amwest Equity Investors, LLC, states as follows:

NATURE OF ACTION

1. This action arises out of The Armand Group, d/b/a The Armand Group, LLC[1] and Amwest Equity Investors, LLC's (hereinafter the "Armand Defendants") attempted efforts to acquire complete ownership and control of Amwest Entertainment, LLC (hereinafter "Amwest

---

[1] Despite diligent investigation, Plaintiff is unable to verify the existence of a corporate entity styled "The Armand Group, LLC." Our investigation of the Illinois Secretary of State records indicates there formerly was an Illinois corporation styled "The Armand Group, Inc.," which voluntarily dissolved on December 21, 2012. The Armand Group, Inc. maintains a website (www.armandgroup.com), which identifies The Armand Group, Inc.'s offices at 401 N. Michigan Ave., Suite 1200, Chicago, Illinois 60611, and contains a list of clients as well as biographies of the principals of The Armand Group, Inc., including: Denis Armand Mola, Rick Cogswell, John P. Ober, Frederic L. Agneessens (with Axxess Partners, a Belgian affiliate of The Armand Group), and Peter F. Meder (identified as a Special Limited Partner). Denis Armand Mola was identified as the Registered Agent and President of The Armand Group, Inc., with offices located at 401 N. Michigan Ave., Suite 1200, Chicago, Illinois 60611, a location which at all relevant times has been occupied by The Regus Group. Upon information and belief, The Armand Group is conducting business as an Illinois partnership of which Denis Armand Mola is believed to be a partner and the Registered Agent.

1

Entertainment" or the "Company.") Specifically, Gravitas seeks damages against the Armand Defendants for tortiously interfering with Amwest Entertainment's Amended and Restated Operating Agreement as of July 1, 2010 (the "Operating Agreement"), which is attached hereto as Exhibit A and incorporated herein by reference, and against Gravitas' prospective business interest. Further, the Armand Defendants aided and abetted Nelson Clemmens (hereinafter "Clemmens") and Teresa Florence (hereinafter "Florence"), both officers, directors, and collectively the majority shareholders of Amwest Entertainment, to engage in a course of conduct that was materially adverse to Amwest Entertainment in breach of the fiduciary duty owed to Gravitas.

2. On or before November 2013, the Armand Group and Clemmens began negotiations for the Armand Group to provide a loan to Amwest Entertainment to discharge and pay off in full a loan from Boston Finance Group, LLC, an affiliate of Plaintiff. Concomitant to paying off this loan, the Armand Group agreed in terms to purchase Clemmens' Class A membership units. In furtherance of this objective, the Armand Defendants, under the newly created entity Amwest Equity Investors, LLC, had prepared a Unit Purchase Agreement that acknowledged an understanding of Gravitas rights under the Operating Agreement, and knowingly chose to pursue a course of action under the Operating Agreement that would forcefully compel Gravitas, as minority shareholder, to sell their membership units in Amwest Entertainment to the Armand Defendants at a drastically diluted price. Gravitas, in its capacity as a holder of the third Board of Director seat of Amwest Entertainment, was not consulted with in any manner regarding this proposed transaction.

3. The Armand Defendants continued to induce Clemmens into forcing the sale of his membership units by promising him an officer position at Amwest Entertainment, a salary of

nearly $150,000.00/year, and potential bonus and stock options after the transaction was consummated. Again, Gravitas was not consulted regarding this transaction.

4. To further aggravate matters for Gravitas, Amwest Entertainment, by and through Clemmens and Florence as directors, officers and majority shareholders, had already effectively misappropriated the value of Amwest Entertainment by engaging in a course of conduct that was materially adverse to Amwest Entertainment and to Gravitas as a holder of forty percent (40%) membership interests.

5. Clearly, the Armand Defendants have improperly attempted to acquire control of Amwest Entertainment by tortiously interfering with Gravitas' rights under Amwest Entertainment's Operating Agreement, and further by aiding and abetting Clemmens and/or Florence in engaging in a course of conduct that materially effects Amwest Entertainment to the detriment of Gravitas.

## PARTIES

6. Plaintiff, Gravitas Equity Partners LLC, is a Florida limited liability company whose principal office is located at 4912 Creekside Drive, Clearwater, Florida 33760.

7. Defendant, The Armand Group, is an Illinois partnership which, upon information and belief, maintains its principal place of business at 111 North Wabash Avenue, Suite 818, Chicago, Illinois 60611.

8. Denis Armand Mola holds himself out as the Managing Director of The Armand Group, LLC. See the attached letter from Denis Armand Mola to Nelsen E. Clemmens dated November 14, 2013, attached as Exhibit B for reference. Despite diligent investigation, Plaintiff is unable to verify the existence nationwide of an entity styled "The Armand Group, LLC"

3

wherein Denis Armand Mola, or any of his other partners who served as members of the dissolved entity, The Armand Group, Inc., is affiliated.

9. Defendant, Amwest Equity Investors, LLC, is a Delaware limited liability company with its purported principal place of business located at 111 North Wabash Avenue, Suite 818, Chicago, Illinois 60611.

JURISDICTION and VENUE

10. This Court has jurisdiction of this action pursuant to 28 U.S.C.§ 1332(a)(1), as Plaintiff and Defendants are citizens of different states, and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

BACKGROUND

A. Amwest Entertainment's Operations

12. Gravitas is the holder and owner of approximately 40.00% equity interest (2,888,888 Class B Membership Units out of 7,222,222 combined Class A and Class B Membership Units) in Amwest Entertainment. Clemmens is the holder and owner of an approximate 51.43% equity interest in Amwest Entertainment (3,714,286 Class A Membership Units out of 7,222,222 combined Class A and Class B Membership Units). Florence is the holder and owner of an approximate 8.57% equity interest in Amwest Entertainment (619,047.50 Class A Membership Units out of 7,222,222 combined Class A and Class B Membership Units).

13. At all relevant times, the Operating Agreement (attached hereto and incorporated herein by reference) was in effect, which, with regards to the management and control of Amwest Entertainment, provides, inter alia:

4

      a.    The business and operations of Amwest Entertainment shall be managed by its Board of Directors (Article 7.1 (a));

      b.    The Board of Directors shall consist of five (5) directors, of which the holders of the Class A membership units in Amwest Entertainment [Clemmens and Florence] have the right to appoint two directors and the holder of the Class B membership units [Gravitas] has the right to appoint one director. The directors appointed by these respective parties thereafter seeking to agree on the remaining two directors (Article 7.1(b), (e));

      c.    Directors shall not engage in conflict of interest transactions, which are defined as transactions in which a director has a direct or indirect financial interest by reason of equity ownership in an entity other than Amwest Entertainment, unless those transactions are ratified by the Board of Directors in the specific means and manner set forth in the Operating Agreement (Article 7.1(1)); and

      d.    Directors are required to discharge their duties in managing Amwest Entertainment in good faith, on an informed basis, and in a manner which the director honestly believes to be in the best interests of the company (Article 7.1 (k)(1)(A)-(C)).

    14.    Clemmens and Florence, as the owners of the Class A Units in Amwest Entertainment, have the ability to maintain control over the business and operations of Amwest Entertainment by and through the election of directors. Clemmens and Florence, as directors and the officers of Amwest Entertainment, have at all times relevant controlled Amwest Entertainment.

    15.    The Operating Agreement for Amwest Entertainment provides for the election by the Board of Directors of a Chief Operating Officer ("CEO") of Amwest Entertainment and a Vice President of Finance for Amwest Entertainment. The Operating Agreement provided that

the officers were required to perform such duties as are customarily incident to their respective position, with further duties and/or requirements permitted at discretion of the Board. Article 7.2(a), (d), and (e).

16. The Operating Agreement for Amwest Entertainment provides that "[t]he Company's Members, directors, and officers shall have a fiduciary duty of care and loyalty towards Amwest Entertainment and the Members." Article 7.6(a).

17. At all times relevant, Clemmens has been CEO and director of Amwest Entertainment. In this capacity, Clemmens has been principally responsible for the business and operations of Amwest Entertainment.

18. At all times relevant, Florence has been Vice President of Finance and a director of Amwest Entertainment. In this capacity, Florence has been principally responsible for the financial affairs of Amwest Entertainment.

B.    Amwest Entertainment Scope of Business

19. Amwest Entertainment is in the business of providing a web-based platform of off-track wagering for horse racing and greyhound racing electronically via the Internet and telephone. Amwest Entertainment maintains offices and conducts its business and operations through physical locations in Prospect, Kentucky and Portland, Oregon. With the exception of limited number of special events, the business and operations of Amwest Entertainment pertain solely to racing inside the United States.

20. Amwest Entertainment currently holds the following licenses to conduct business: (i) Amwest Entertainment's account wagering business is currently licensed and regulated by the Oregon Racing Commission; (ii) Amwest Entertainment's off-track wagering operation is currently licensed by the South Dakota Commission on Gaming; (iii) Amwest Entertainment's

Riders Up OTB is also licensed by the City of Sioux Falls Department of Health and the South Dakota Department of Revenue and Regulation; and (iv) in Louisiana as a tribal gaming vendor by the Louisiana Department of Public Safety, and by the National Indian Gaming Council.

21. Due to its business structure and model, including the handling of funds from bettors and in complying with the various licensing and regulatory bodies that it reports to, Amwest Entertainment is required to be managed and operated with the highest of standards which demonstrate financial integrity, strength, and the ability to operate as a going concern. Moreover, Amwest Entertainment is required to prepare annual audited financial statements.

C. Amwest Entertainment Dealings with the Armand Defendants

22. On or before November 2013, Amwest Entertainment, by and through Clemmens and/or Florence, entered into discussions with the Armand Group regarding the sale of their respective Class A Units in Amwest Entertainment. The Armand Group further offered to provide a loan to Amwest Entertainment to discharge and pay off in full the loan from Boston Finance Group, LLC.

23. Subsequent to this initial offer in or around February 2014, the Armand Group had prepared a Unit Purchase Agreement and an Executive Employment Agreement for Clemmens. Copies of Unit Purchase Agreement and Executive Employment Agreement are attached hereto as Exhibit C and incorporated herein by reference.

24. In pertinent part, the Unit Purchase Agreement articulated the terms of the Armand Defendants investment to purchase Clemmens Class A membership units and acquire complete control over Amwest Entertainment.

25. In the "Whereas" clauses of the Unit Purchase Agreement, the Armand Defendants, through the newly created limited liability company Amwest Equity Investors,

acknowledged its desire to purchase Clemmens Class A membership units "including the applicable rights associated therewith and the obligations of a holder thereof, [as] set forth in the Company's Amended and Restated Operating Agreement dated as of July 1, 2010."

26. In the "Whereas" clauses of the Unit Purchase Agreement, the Armand Defendants, further agreed to various mechanics related to the sale of Clemmens units, including Gravitas right to first refusal as set forth in section 8.3 of the Operating Agreement; the co-sale rights set forth in section 8.8 of the Operating Agreement; and the drag-along right set forth in section 8.9 of the Operating Agreement.

27. In the "Whereas" clauses of the Unit Purchase Agreement, the Armand Defendants further acknowledged it's understanding that the purchase of Clemmens Units compelled Florence and Gravitas as minority shareholders to also sell their respective membership units.

28. In section 4.1(i) of the Unit Purchase Agreement, Clemmens sale and the Armand Defendants purchase of Clemmens membership units was conditioned on Clemmens executing an Executive Employment Agreement, attached as Exhibit A to Unit Purchase Agreement.

29. In section 2(a) and (b) of the Executive Employment Agreement, the Armand Defendants, through Amwest Equity Investors, offered Clemmens the position of CEO. In this position, Clemmens was granted the authority to continue to oversee, direct and manage the operations of Amwest Entertainment even after selling all equitable interest in the company.

30. In section 3(a), (b) and (c) of the Executive Employment Agreement, the Armand Defendants, through Amwest Equity Investors, offered Clemmens a base salary at an annual rate of not less than $143,000.00 for 2014, which would increase to $149,500.00 in 2015. Clemmens would further qualify for a discretionary bonus at the direction of the board, which

would no longer include Gravitas minority interests, as well as equity compensation that would vest in a 2.5% ownership position in Amwest Equity Investors, as the sole shareholder in the Amwest Entertainment, each year with a maximum ownership interest of 10% after 4 years.

31. The abovementioned documents, which would prospectively allow Amwest Equity Investors to purchase control of Amwest Entertainment, were prepared at the request of the Armand Defendants by the Chicago office DLA Piper.

32. DLA Piper also served, and continues to serve, as legal counsel for Boston Finance Group, LLC, an entity which shares two common equity holders with Gravitas.

D.     Amwest Entertainment's Directors Provided No Notice to Gravitas

33. Neither Clemmens nor Florence, in their capacity as directors and officers of Amwest Entertainment, provided written notice to Gravitas regarding a meeting of the Amwest Board of Directors to discuss the Armand Defendants offer to purchase Clemmens Class A units as required under the Operating Agreement.

34. Neither Clemmens nor Florence, in their capacity as directors and officers of Amwest Entertainment, provided written notice to Gravitas regarding a meeting of the Amwest Board of Directors to discuss the Armand Defendants offer to loan $1,000,000.00 to Amwest Entertainment, the need for such a loan, and/or the terms of the loan.

35. The Armand Defendants intend to purchase Clemmens Class A membership shares in Amwest Entertainment through its subsidiary, Amwest Equity Investors.

E.     Prior Relationship Between Clemmens and the Armand Group

36. The Armand Defendants, by and through Denis Armand Mola, maintain a prior business relationship with Clemmens.

37. Specifically, Clemmens maintains an ownership interest in Armand Capital Group, LLC, another entity under the control and direction of, or otherwise associated with, Denis Armand Mola and/or the Armand Defendants.

38. Moreover, Evermore Investments, LLC ("Evermore Investments"), a Kentucky limited liability company of which Clemmens was president, invested $350,000.00 of 1 *12%* stake in Armand Billiards Group, a consolidator of companies in the billiards market.

F.  Litigation Background

39. Beginning on January 25, 2010, an affiliate of Gravitas, Boston Finance Group LLC, extended a revolving line of credit to Amwest Entertainment in the principal amount of $250,000. This loan eventually increased to $1,000,000 principal by March 11, 2011. By May 1, 2012, Amwest Entertainment defaulted on this loan, and lawsuit was brought against Amwest Entertainment by Boston Finance on March 22, 2013 (*Circuit Court of Kentucky, Oldham County, Case No. 13-CI-00217*). This lawsuit remains pending.

40. On December 23, 2010, Boston Finance advanced to Clemmens a loan in the principal amount of $165,000. This loan too swelled to $295,862.19 by February 1, 2012. On January 1, 2013, Clemmens defaulted on this loan and Boston Finance filed suit on March 22, 2013 (*Circuit Court of Kentucky, Oldham County, Case No. 13-CI-00217*). On November 25, 2013, the Court entered a Summary Judgment against Clemmens.

41. On May 24, 2013, Gravitas filed a lawsuit against Amwest Entertainment, Clemmens and Florence seeking the appointment of a receiver and alleging that, among other things, Clemmens and Florence engaged in gross mismanagement of the Company and its assets (*Circuit Court of Kentucky, Oldham County, Case No. 13-CI-00360*). This case also remains pending.

## COUNT I – TORTIOUS INTERFERENCE WITH CONTRACT

42. Plaintiff, Gravitas Equity Partners, LLC, re-alleges paragraphs 1 through 41 as and for paragraph 42.

43. Amwest Entertainment's Operating Agreement is a binding and enforceable contract by and among Amwest Entertainment, Clemmens, Florence, and Gravitas.

44. The Operating Agreement sets forth the terms of any and all transfers of membership units in Amwest Entertainment.

45. At all times relevant, the Armand Defendants had actual and/or constructive knowledge of the Operating Agreement.

46. Through its actions and conduct, the Armand Defendants seek and intend to deprive Gravitas of the provisions and protections afforded to it as a minority shareholder of Amwest Entertainment under the Operating Agreement.

47. Through its actions and conduct, including making an agreement with Clemmens for the purchase of his membership units of Amwest Entertainment, the Armand Defendants knew or should have known that Gravitas would sustain economic damages.

48. The Armand Defendants knowingly and intentionally interfered with Amwest Entertainment's Operating Agreement causing damage and loss to Gravitas without any right or justifiable cause.

WHEREFORE, Plaintiff, Gravitas Equity Partners, LLC, respectfully requests this Court to enter judgment in its favor and against Defendants The Armand Group, d/b/a The Armand Group, LLC, and Amwest Equity Investors, LLC, in an amount greater than $75,000.00 plus costs and any other appropriate relief.

## COUNT II – AIDING AND ABETTING CLEMMENS' BREACH OF FIDUCIARY DUTY

49. Plaintiff, Gravitas Equity Partners, LLC, re-alleges paragraphs 1 through 47 as and for this paragraph 49.

50. Section 7.6(a) of Amwest Entertainment's Operating Agreement provides that "[t]he Company's Member's, directors, and officers shall have a fiduciary duty of care and loyalty towards the Company and the Members."

51. Through its actions and conduct, including making an agreement with Clemmens for the purchase of his membership units of Amwest Entertainment, the Armand Defendants knowingly and substantially assisted Clemmens in breaching the Operating Agreement, including section 7.1.

52. At all times relevant, the Armand Defendants knew or should have known that Gravitas would sustain economic damages as a result of their conduct.

53. The Armand Defendants knowingly and intentionally interfered with Amwest Entertainment's Operating Agreement causing damage and loss to Gravitas without any right or justifiable cause.

WHEREFORE, Plaintiff, Gravitas Equity Partners, LLC, respectfully requests this Court to enter judgment in its favor and against Defendants The Armand Group, d/b/a The Armand Group, LLC, and Amwest Equity Investors, LLC, in an amount greater than $75,000.00 plus costs and any other appropriate relief.

**COUNT III – TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS**

54. Plaintiff, Gravitas Equity Partners, LLC, re-alleges paragraphs 1 through 45 as and for this paragraph 54.

55. Pursuant to section 8.3(a) of the Operating Agreement, Gravitas had a reasonable expectation of receiving 30 days advanced written notice of a Clemmens' intention to sell and transfer his ownership interest in Amwest Entertainment, and the right to first refusal pursuant to section 8.3 (b) and (c) of the Operating Agreement to acquire the transferring member's interest.

56. Through its actions and conduct, the Armand Defendants seek and intend to deprive Gravitas of the provisions and protections afforded to it as a minority shareholder of Amwest Entertainment under the Operating Agreement.

57. Through its actions and conduct, including making an agreement with Clemmens for the purchase of his membership units of Amwest Entertainment, the Armand Defendants knew or should have known that Gravitas would sustain economic damages.

58. The Armand Defendants knowingly and intentionally interfered with Gravitas prospective economic opportunity to purchase Clemmens' membership units of Amwest Entertainment causing damage and loss to Gravitas without any right or justifiable cause.

WHEREFORE, Plaintiff, Gravitas Equity Partners, LLC, respectfully requests this Court to enter judgment in its favor and against Defendants The Armand Group, d/b/a The Armand Group, LLC, and Amwest Equity Investors, LLC, in an amount greater than $75,000.00 plus costs and any other appropriate relief.

        Respectfully submitted,

By: /s/_Peter S. Faraci_____

        Attorneys for Plaintiff

Peter S. Faraci, Esq. (ARDC No. 6230899)
Faraci & Faraci
3 South Prospect Ave., Suite 4
Park Ridge, Illinois 60068
(847) 292-0199 (phone)
(847) 292-0054 (fax)
faraci@faracilaw.com

and

Denean Sturino, Esq. (ARDC No. 6231325)
David A. Neiman, Esq. (ARDC No. 6300412)
O'Hagan, LLC
One East Wacker Street Drive, Suite 3400
Chicago, Illinois 60601
(312) 422-6100 (phone)
(312) 422-6110 (fax)
dsturino@ohaganlaw.com
dneiman@ohaganlaw.com